FILED

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA

2015 OCT 22   P 12: 14

(Alexandria Division)

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

|  |  |
|---|---|
| CLEVELAND UNIVERSITY-KC f/k/a CLEVELAND CHIROPRACTIC COLLEGE and THE CLEVELAND CHIROPRACTIC COLLEGE FOUNDATION, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff(s),<br><br>v.<br><br>VOLKSWAGEN AG, VOLKSWAGEN GROUP OF AMERICA, INC., AUDI OF AMERICA, MARTIN WINTERKORN, HERBERT DIESS, MICHAEL HORN, JAN BURES, MARK McNABB, JONATHAN BROWNING and SCOTT KEOGH,<br><br>Defendants. | Civil Action No. 1: 15-cv-01376 LO/MSN<br><br>__CLASS ACTION__<br><br>COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>__DEMAND FOR JURY TRIAL__ |

## INTRODUCTION

1.     This is a federal securities class action brought on behalf of all persons who purchased or otherwise acquired the publicly-traded ordinary and preferred American Depositary Receipts ("ADRs") of Volkswagen AG ("Volkswagen" or the "Company") between November 19, 2010 and September 21, 2015, inclusive (the "Class Period"). This action seeks to recover damages caused by defendants' violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5, 17 C.F.R. §240.10b-5, promulgated thereunder by the U.S. Securities and Exchange Commission ("SEC").

1

2.    Headquartered in Wolfsburg, Germany, Volkswagen is one of the world's leading automobile manufacturers and the largest carmaker in Europe. In 2014, Volkswagen sold over ten million cars, representing approximately 13% of the global passenger car market. The Company comprises 12 brands: Volkswagen passenger cars, Audi, SEAT, SKODA, Bentley, Bugatti, Lamborghini, Porsche, Ducati, Volkswagen commercial vehicles, Scania and MAN. Volkswagen operates 31 production plants throughout the world, including a large production plant in Chattanooga, Tennessee. The Company's wholly-owned U.S. subsidiary, Volkswagen Group of America, Inc. ("Volkswagen America"), is a corporation doing business in every U.S. state and the District of Columbia and is organized under the laws of New Jersey, with its principal place of business in Herndon, Virginia.

3.    Prior to and during the Class Period, defendants engaged in a scheme to defraud and made numerous materially false and misleading statements and omissions to investors regarding the Company's operations and its business and financial condition and outlook. Specifically, defendants misled investors by failing to disclose that the Company had utilized a "defeat device" in certain of its diesel cars that allowed such cars to temporarily reduce emissions during testing, while achieving higher performance and fuel economy, as well as discharging dramatically higher emissions, when testing was not being conducted. The use of this device allowed Volkswagen to market its diesel vehicles to environmentally conscious consumers, increasing its sale of diesel cars in the United States and abroad and, as a result, its profitability. As a result of defendants' scheme and false and misleading statements and omissions, Volkswagen's ordinary and preferred ADRs traded at artificially inflated prices during the Class Period, reaching highs of $54.82 and $56.55 per ADR, respectively, on December 30, 2013.

2

4.      The truth regarding defendants' false and misleading statements and omissions and scheme to defraud was revealed to investors and the markets through several shocking disclosures and news reports. On September 18, 2015, the Environmental Protection Agency ("EPA") issued a Notice of Violation ("NOV"). The NOV stated that defendants had installed sophisticated software in Volkswagen and Audi diesel vehicles sold in the United States that could detect when the vehicle was undergoing official emissions testing and turn the full emissions controls on only during the test. At all other times, however, the emissions controls were deactivated, meaning that pollution was freely released into the environment at levels exceeding those allowed by federal and state clean air regulators. This software produced and used by Volkswagen is a "defeat device" as defined by the Clean Air Act.

5.      That same day, *The New York Times* published a front-page article entitled "U.S. Orders Major VW Recall Over Emissions Test Trickery." The article reported that the Company had "illegally installed software in its diesel-power cars to evade standards for reducing smog" and that Volkswagen had "admitted to the use of a so-called defeat device. The recall involves 4-cylinder Volkswagen and Audi vehicles from model years 2009-2015." The article also reported that the Department of Justice ("DOJ") had opened an investigation and that fines of as much as $18 billion could be imposed as a result of defendants' misconduct.

6.      In the days following these disclosures, which began to reveal the relevant truth that had previously been concealed from the market, Volkswagen's share price collapsed. Specifically, between September 17, 2015 and September 22, 2015, the price of Volkswagen's ordinary ADRs plummeted over 33%, from a close of $38.03 per share on September 17, 2015 to $25.44 per share on September 22, 2015. Volkswagen's preferred ADRs declined from a close of $38.05 per share on September 17, 2015 to a close of $23.98 per share on September 22, 2015.

3

7.      These price declines have resulted in hundreds of millions of dollars in losses to Volkswagen ADR investors, who relied on the accuracy of defendants' statements and suffered damages when the truth began to be revealed.

8.      This action seeks to recover for those losses.

## JURISDICTION AND VENUE

9.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5, 17 C.F.R. §240.10b-5, promulgated thereunder by the SEC. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §27 of the Exchange Act, 15 U.S.C. §78aa.

10.      Venue is proper in this District pursuant to §27 of the Exchange Act, as the defendants transact business in this District and Volkswagen America's headquarters are located in this District at 2200 Ferdinand Porsche Drive, Herndon, Virginia 20171.

11.      In connection with the acts, conduct and other wrongs alleged in this Complaint, defendants directly or indirectly used the means and instrumentalities of interstate commerce, including, but not limited to, the U.S. mail, interstate telephone communications and the facilities of the national securities exchanges.

## PARTIES

12.      Plaintiffs Cleveland University-KC f/k/a Cleveland Chiropractic College and the Cleveland Chiropractic College Foundation (collectively, "Plaintiffs") purchased Volkswagen ADRs at artificially inflated prices during the Class Period, as described in the attached certification, and suffered an economic loss when the relevant truth was disclosed and the ADR prices declined.

4

13.     Defendant Volkswagen is one of the world's leading automobile manufacturers and the largest carmaker in Europe. In 2014, Volkswagen sold over ten million cars, representing approximately 13% of the global passenger car market. The Company comprises 12 brands: Volkswagen passenger cars, Audi, SEAT, SKODA, Bentley, Bugatti, Lamborghini, Porsche, Ducati, Volkswagen commercial vehicles, Scania and MAN. Volkswagen operates 31 production plants throughout the world, including a large production plant in Chattanooga, Tennessee.

14.     Defendant Volkswagen America, Volkswagen's wholly-owned U.S. subsidiary, is a corporation doing business in all 50 states and the District of Columbia and is organized under the laws of the State of New Jersey, with its principal place of business located at 2200 Ferdinand Porsche Drive, Herndon, Virginia 20171.

15.     Defendant Audi of America ("Audi"), a wholly-owned subsidiary of Volkswagen, is a corporation doing business in all 50 states and the District of Columbia and is organized under the laws of the State of New Jersey, having its principal place of business located at 2200 Ferdinand Porsche Drive, Herndon, Virginia 20171.

16.     Defendant Martin Winterkorn ("Winterkorn") was appointed Chief Executive Officer ("CEO") of Volkswagen in 2007 and served as CEO and Chairman of the Board of Management of Volkswagen until his resignation on September 23, 2015. Winterkorn also served as Chairman of the Supervisory Board of Audi AG and Chairman of the Board of Management of Porsche Automobil Holding SE. Winterkorn became head of Group Quality Assurance at Volkswagen in 1993 and was appointed General Manager of Volkswagen in March 1994. He was additionally responsible for the VW Group Product Management from June 1995. In January 1996, Winterkorn took over from Herbert Schuster as Member of the Brand Board of Management for Technical Development for the

Volkswagen brand. From July 2000, he was Member of the VW Group Board of Management for Technical Development.

17.     Defendant Herbert Diess ("Diess") is a Member of the Board of Management of Volkswagen and Chairman of the Board of Management of the Volkswagen passenger cars brand.

18.     Defendant Michael Horn ("Horn") is the President and CEO of Volkswagen America, as well as President for the Volkswagen of America brand. Horn assumed this position in January 2014. Horn joined Volkswagen America after 23 years with Volkswagen. Horn previously served as the Global Head of After Sales at Volkswagen.

19.     Defendant Jan Bures ("Bures") is the Executive Vice President for Group After Sales & Service at Volkswagen America. Bures is responsible for steering the group after-sales strategy, delivery of Volkswagen America parts turnover and profit, parts logistics, wholesale parts operations, contract centers and roadside assistance. He reports directly to defendant Horn.

20.     Defendant Mark McNabb ("McNabb") is Chief Operating Officer of Volkswagen America. McNabb is responsible for the management of sales, after sales and customer experience for the Volkswagen brand. McNabb reports directly to defendant Horn. Prior to coming to Volkswagen America in May 2013, McNabb served as President and CEO of Maserati North America. McNabb also served as Maserati's Worldwide Commercial Director.

21.     Defendant Jonathan Browning ("Browning") served as CEO of Volkswagen America from October 2010 until December 2013. Browning joined Volkswagen in June 2010, directing the Company's National Sales Companies.

22.     Defendant Scott Keogh ("Keogh") is President of Audi of America and is in charge of all U.S. activities of Audi. Keogh became President in June 2012 after serving as Chief Marketing Officer for six years.

6

23.     As officers and/or directors and controlling persons of Volkswagen, Volkswagen America and/or Audi, the Individual Defendants[1] each had a duty to promptly disseminate accurate and truthful information regarding the Company's financial condition, performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects and to correct any previously-issued statements that had become materially misleading or untrue so that the market price of the Company's stock would be based upon truthful and accurate information and participation in a scheme to defraud during the Class Period violated these specific requirements and obligations.

24.     The Individual Defendants participated in the drafting, preparation and/or approval of the various public statements and other communications complained of herein, were aware of or recklessly disregarded the misstatements contained therein and omissions therefrom and were aware of their materially false and misleading nature. Because of their Board membership and/or executive positions with Volkswagen, Volkswagen America and/or Audi, each of the Individual Defendants had access to the adverse undisclosed information about Volkswagen as particularized herein and knew or recklessly disregarded that these adverse facts rendered the representations made by or about Volkswagen (or adopted by the Company) materially false and misleading.

25.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of Volkswagen, Volkswagen America and/or Audi, were able to and did control the content of the various filings and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of documents

---

[1] The "Individual Defendants" are defendants Winterkom, Diess, Horn, Bures, McNabb, Browning and Keogh.

7

alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected.

26.     Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and/or participated in a scheme to defraud and is therefore primarily liable for the conduct alleged herein.

### VOLKSWAGEN'S U.S. ADR PROGRAM

27.     An American Depositary Receipt ("ADR") is a U.S. dollar denominated form of equity ownership in a non-U.S. company. It represents the foreign shares of a company held on deposit by a custodian bank in the company's home country and carries the corporate and economic rights of the foreign shares, subject to the terms specified on the ADR certificate.

28.     Volkswagen has two sponsored ADR programs representing preferred and ordinary shares. Both are sponsored by J.P. Morgan and trade in the United States on the over-the-counter ("OTC") market.

| Type | Ticker | CUSIP |
|------|--------|-------|
| Preferred | VLKPY | 928662402 |
| Ordinary | VLKAY | 928662303 |

### BACKGROUND

29.     In 2011, numerous publications reported that Volkswagen had set an ambitious goal — to become the largest automaker in the world by 2018. According to *Automotive News Europe,* "a central part of its plan to get there is the goal of boosting core-brand sales in the United States." Volkswagen's goal, which was set in 2008, involved more than doubling its sales in the United States, from 324,402 units sold in 2007 to 800,000 units by 2018.

8

30.     An important part of Volkswagen's sales and marketing efforts in the United States involved the promotion of its diesel vehicles as low-emission, fuel-efficient cars that achieved performance comparable with gasoline vehicles. Volkswagen's marketing campaign was successful, and Volkswagen became the largest seller of diesel passenger vehicles in the United States.

31.     Volkswagen actively promoted its diesel vehicles as both "clean" and "green," labeling its vehicles as "Clean Diesel." Indeed, on the "Environment" page of Volkswagen America's website, the Company states that it takes "environmental responsibility very seriously. When it comes to making our cars as green as possible, Volkswagen has an integrated strategy focused on reducing fuel consumption and emissions, *building the world's cleanest diesel engines* and developing totally new power systems, which utilize new fuel alternatives."

32.     Volkswagen prominently promoted its Clean Diesel technology, claiming that it was designed to "meet the toughest emission standards":

> At Volkswagen Group, we are providing that clean diesel technologies are a practical and economically friendly bridge to the fuel alternatives of tomorrow.
>
> Clean Diesel TDI vehicles from Audi and Volkswagen Group are built on innovative turbo-charged direct-injection engine technologies for enhanced fuel economy. We combine that with the most advanced catalytic converter systems, *designed to meet the toughest emission standards*. Finally, we use ultra-low-sulfur clean diesel fuel. The result is the best of both worlds for people and the planet:
>
> - More than 30% improvements in real-world fuel economy
>
> - 25% reduction in $CO_2$ emissions
>
> - 90% reduction in nitrous oxide emissions
>
> According to the US Environmental Protection Agency (EPA), converting one-third of the cars on the road today to TDI Clean Diesel would save approximately 1.4 million barrels of oil a day. That's equal to the daily shipments from Saudi Arabia to the United States.

9

J.D. Power and Associates projects the new vehicle diesel market will triple in the coming years, reaching 15 percent of all sales by 2020 — saving 17 billion gallons of fuel over the fleet's useful life. At Volkswagen Group of America, we're miles ahead of the curve.

33.     Defendants bolstered their environmental contentions by trumpeting the fact that the Audi A3 TDI and VW Jetta TDI were named the 2010 Green Car of the Year and the 2009 Green Car of the Year, respectively. Defendants also launched a "Think Blue" program, which they explained as part of their policy of being "more responsible on the road and more environmentally conscious — not just in our cars."

34.     In addition, defendants supported and directed a website to promote the Company's "clean" diesel technology, www.clearlybetterdiesel.org, which says the technology reduces smog and "meets the highest standards in all 50 states, thanks to ultra-low sulfur diesel (ULSD) fuel and innovative engine technology that burns cleaner."

35.     Volkswagen's marketing was successful. In 2013, the Company sold 95,823 Volkswagen diesel passenger vehicles in the United States, accounting for 23.5% of total sales and an increase of 6.1% over its 2012 total of 90,294. Audi sold 10,076 diesel passenger vehicles in the United States, an increase of 40% over the 7,195 sold in 2012. Porsche sold 5,386 diesel passenger vehicles in the United States, a huge jump of 333% over the 2012 total of 1,618.

36.     In part due to its success in marketing its diesel vehicles, Volkswagen reached its ambitious goal three years early. According to *Forbes,* Volkswagen is now the largest automaker in the world, with 5.04 million vehicles sold worldwide in the first half of 2015.

## DEFENDANTS' FALSE AND MISLEADING STATEMENTS ISSUED DURING THE CLASS PERIOD

10

37.    Throughout the Class Period, defendants made numerous materially false and misleading statements and omissions to investors regarding the Company's operations and its business and financial results and outlook. The materially false and misleading statements and omissions made by defendants during the Class Period include the following.

38.    On November 19, 2010, Volkswagen issued a press release entitled "Environmental Management Has a Long History at Volkswagen." In the press release, defendants stated:

> For the 15th time in succession, the Volkswagen technical development environmental management system has been awarded DIN EN ISO 14001 certification. An "anniversary" brochure has been produced to mark the occasion. The brochure explains exactly how *environmental protection became a core part of the product creation process at Volkswagen.*
>
> The Volkswagen technical development environmental management system has today been awarded its latest DIN EN ISO 14001 certificate from TUV NORD. The ISO/TR 14062 certification first achieved in 2009 has also been renewed. The standard stipulates binding conditions for the integration of environmental aspects into product design and development.
>
> *"Volkswagen set itself the goal back in 1995 of achieving continuous improvements in the environmental compatibility of its products and production processes,"* said Gunter Damme, Head of Environment at Volkswagen. "The technical development environmental management system is the key to ensuring that each and *every new Volkswagen is more environmentally friendly than its predecessor".*

39.    On January 4, 2011, Volkswagen America issued a press release entitled "Volkswagen of America Closes 2010 with Best Overall Year Sales Since 2003." In the press release, defendants stated:

> . . . Volkswagen of America, Inc. today reported that December 2010 marked a 17 percent increase over prior year sales for the entire line of vehicles. In addition, 2010 achieved a 20 percent increase over 2009 total year sales. Increased sales numbers resulted in best annual sales since 2003 and best December sales since 2005.

\*       \*       \*

11

> *Volkswagen's impressive line-up of TDI Clean Diesels fared well again in December with Golf selling 56 percent of its models as TDI and the all-new Touareg selling 35 percent as TM.   Overall, 22 percent of Volkswagen models were sold with TDI Clean Diesel engines.*

40.     On May 31, 2011, Volkswagen issued a press release entitled "US Department of Transportation Secretary Ray LaHood views Clean Diesel engines as a key component of future technology for highway transportation in the USA." In the press release, defendants stated:

> High-tech *Clean Diesel engines from Volkswagen are a cornerstone in the environmentally-friendly renewal of individual mobility in the United States.* US Secretary of Transportation Ray LaHood focused on this Tuesday last week in his welcoming speech at the opening ceremony for Volkswagen's new plant in Chattanooga, Tennessee.
>
> US Secretary of Transportation Ray LaHood emphasised that the USA finds itself in an era of transition towards a new form of mobility — and thanks to the innovative technologies of Volkswagen, clean diesel engines will play an important role in implementing a new powertrain strategy for the United States. "And that is not only because it is the right engine for environmental and climate protection in the USA. Clean diesel engines also make sense economically, for both individuals and American companies. The Clean Diesel technology that is found in the new US Passat, for example, makes a genuine difference."
>
> \*      \*      \*
>
> *In April 2011, the diesel share of vehicles sold by Volkswagen of America was 24 per cent. This means that nearly one in every four Volkswagen brand cars delivered in the USA has a fuel-efficient and clean TDI engine.* The Volkswagen Group is the global market leader in diesel engine technology, and back in 2008 it was the first carmaker to offer diesel vehicles on the US market that conformed to the BIN-5 standard, the most stringent emissions legislation in the world. In America, the Volkswagen brand already offers four TDI clean diesel models, and the Audi brand offers two. This year, the new Passat TDI and the Beetle TDI will be added. Audi has announced that it will bring the TDI to the luxury class in the USA and offer TDI clean diesel engines in both the Audi A6 and Audi A8 in 2013.
>
> Many experts consider these diesel engines to be the most advanced combustion engines of our times. They combine minimum fuel consumption and the *lowest emissions with maximum power.* Depending on the specific model, Clean Diesel technologies may include an SCR catalytic converter — which reduces nitrogen oxide emissions (NOx) by

12

> up to 90 percent — or a NOx storage catalytic converter and oxidation catalytic converter, particulate filter, exhaust gas recirculation (EGR) and intelligent interventions by the electronic engine management system.

41.     On January 9, 2012, Volkswagen issued a press release entitled "Volkswagen Group delivers over 8 million vehicles for first time." In the press release, defendants stated:

> In 2011, the Volkswagen Group clearly exceeded prior-year deliveries, selling over eight million vehicles for the first time in a twelve-month period. A total of 8.16 (2010: 7.14; +14.3 percent) million vehicles were handed over to customers. Developments on the global passenger car market during the same period were also positive; however growth only ran at 5.1 percent, and Europe's largest automaker was therefore able to expand its global market share. The Group brands also closed 2011 on a high note, delivering 650,000 (December 2010: 545,600; +19.1 percent) vehicles to customers in the month of December.
>
> "All Group brands reported further gains under difficult conditions on volatile markets. This outstanding result is clearly a team achievement," the Group Board Member for Sales, Christian Klingler, said. "However, a very challenging year lies ahead. The risks on European markets in particular will multiply in 2012. In spite of this, the Volkswagen Group is well placed and well prepared to master the upcoming challenges and play a leading role on world markets."

(Footnote omitted.)

42.     On March 1, 2012, Volkswagen America issued a press release entitled "Volkswagen Reports 42.5 Percent Increase in February U.S. Sales." In the press release, defendants stated:

> . . . Volkswagen of America, Inc. (VWoA) today reported 30,577 units sold in February, a 42.5 percent increase over prior year sales and best February since 1973.
>
> "February's strong sales of 30,577 units and back-to-back record months reflects the increasing consumer confidence in the marketplace and strong interest for our products," said Jonathan Browning, President and CEO, Volkswagen Group of America, Inc. "With escalating fuel prices, we anticipate increased demand for our full-range of fuel efficient vehicles, ***particularly our TDI Clean Diesel models***, to continue into the spring selling season."

13

\*     \*     \*

The 2012 Beetle sold 1,303 units. The TDI Clean Diesel Coupe was unveiled this month at the Chicago Auto Show; it will go on sale late summer 2012.

\*     \*     \*

*Volkswagen's high-mileage, clean diesel TDI models account for 21.3 percent of sales in February, a 54.6 percent increase versus the prior month.*

43.    On October 2, 2012, Volkswagen America issued a press release entitled "Volkswagen Reports a 34.4 Percent Sales Increase in September." In the press release, defendants stated:

> Volkswagen of America, Inc. (VWoA) today reported 36,339 units sold in September, a 34.4 percent increase over prior year sales, a 37.2 percent increase year-to-date and the best September since 1972.
>
> "Tracking over a 37 percent increase year-to-date is a strong proof point that our products are on more shopping lists and gaining acceptance in the market," said Jonathan Browning, President and CEO, Volkswagen Group of America, Inc.. "As we enter the fourth quarter of the year, we expect to continue our pattern of outperforming the industry."
>
> \*     \*     \*
>
> The Beetle continues to gain momentum with 2,622 units sold. The Beetle TDI, sold 167 units, *further highlighting customer demand for Volkswagen's Clean Diesel TDI technology.*

44.    On January 3, 2013, Volkswagen America issued a press release entitled "Volkswagen Reports 35.1% Percent Increase in 2012 U.S. Sales." In the press release, defendants stated:

> . . . Volkswagen of America, Inc. (VWoA) today reported 438,133 units delivered in 2012, a 35.1 percent increase over prior year sales. December deliveries totaled 44,005, up 35.4 percent over 2011, marking the best December since 1970.

14

2056994.1

"2012 marked another successful year of growth for Volkswagen of America," said Jonathan Browning, President and CEO, Volkswagen Group of America, Inc. "The Volkswagen brand delivered another important step in our longterm growth plan. 2012 marked the third consecutive year of significant double-digit growth rates and we more than doubled our volume of 2009. With the addition of the all-new Jetta Turbo Hybrid, Beetle Convertible and our strong dealer network, we expect to continue to outpace the industry in 2013."

\*     \*     \*

*Volkswagen's high-mileage, TDI® Clean Diesel models account for 20.6 percent of sales in 2012 and 16.7 percent in December.*

45.     On March 1, 2013, Volkswagen America issued a press release entitled "Volkswagen Reports 30th Consecutive Month of Sales Growth." In the press release, defendants announced that Volkswagen America had "reported 31,456 units delivered in February [2013], a 2.9 percent increase over prior year sales and the best February since 1973." The press release also reported that *"Volkswagen's high-mileage, clean diesel TDI models accounted for 22.4 percent of sales in February, a 10.9 percent increase over the prior year."*

46.     On April 5, 2013, Volkswagen America issued a press release entitled "Volkswagen Spreads Diesel Gospel in Gotham." In the press release, defendants stated that "[a]s the tide of clean-diesel sales in the U.S. market slowly rises, Volkswagen executives are happy to talk about their company's *seminal role in successfully reintroducing diesel-powered automobiles to the American-market mainstream."* Defendants further stated that "Volkswagen has been the leader of the mass-market re-introduction of diesel power to the U.S. market, while sibling brand Audi has taken the lead in the luxury segment. . . . *Diesel's fuel-efficiency advantage, as well as torque properties, make it an increasingly attractive choice for American consumers with a 'green' orientation who don't want hybrids or EVs."*

15

47.    On December 20 2013, Volkswagen America issued a press release entitled "It's Official: Volkswagen Group of America Has Sold More Than 100,000 TDI® Clean Diesel Vehicles in 2013." In the press release, defendants announced that Volkswagen "has *sold 100,000 TDI® Clean Diesel vehicles from the Volkswagen and Audi brands this year*. This is the first time it has reached this milestone in a calendar year." The press release further stated that "Audi and Volkswagen pioneered TDI® Clean Diesel engines and, as a result, the *Volkswagen Group of America is the current market leader in Clean Diesel*. Today's Clean Diesel engines deliver more torque, better highway fuel consumption and *reduced CO2 emissions* compared with equivalent gasoline engines." Defendant McNabb was quoted in the press release, stating that "'[s]elling more than 100,000 TDI Clean Diesel vehicles is a significant milestone for Volkswagen Group of America . . . . We're excited to see the increasing numbers of customers able to enjoy the reliability, durability, fuel-efficiency and power of the clean diesel engine.' Defendant Keogh was also quoted in the press release, stating that "'[t]he past year has shown that American consumers clearly recognize the benefits of clean diesel TDI vehicles . . . . They understand now more than ever that this is a technology *delivering real answers to society's concerns about fuel consumption and greenhouse gas emissions without compromises.'*"

48.    On January 3, 2014, Volkswagen America issued a press release entitled "Volkswagen Reports December 2013 and Year End Results." In the press release, defendants stated:

> . . . Volkswagen of America, Inc. (VWoA) today reported 407,704 units delivered in 2013. December deliveries totaled 34,015.
>
> *Volkswagen's high-mileage, TDI® Clean Diesel models totaled 95,823 units for the year accounting for 23.5 percent of sales in 2013 and 17.8 percent in December. Since 2000, Volkswagen of America has delivered over 500,000 TDI® Clean Diesel vehicles.*

16

"Volkswagen is now operating at a new plateau, delivering over 400,000 units for the second consecutive year in over 40 years," said Mark McNabb, chief operating officer, Volkswagen of America, Inc. "We look forward to 2014, with the introduction of the new Golf family, continued increased awareness and enthusiasm for the brand's core models and the *strength of our TDI offerings*, we are well positioned for our next phase of growth to come over the next few years."

The Chattanooga-built Volkswagen Passat continues to demonstrate its strong appeal in the market with 9,254 units sold in December and 109,652 for the year. *Clean Diesel TDI Passat sales were the best year on record with 34,963 vehicles delivered, accounting for 32 percent of sales of the year.*

49.     On March 6, 2014, Volkswagen America issued a press release entitled "Volkswagen Group of America Releases 2013 Corporate Social Responsibility Report." In the press release, defendant Horn stated that "'Volkswagen Group of America is united not only by our devotion to building quality vehicles, but also by our *commitment to doing what's right for the environment*, our communities and our employees.'" The press release also stated that "[c]utting-edge technologies have enabled Volkswagen to *progress toward carbon-neutral vehicles, including . . . clean diesel vehicles*. In 2013, Volkswagen and Audi accounted for 75 percent of the U.S. market for clean diesel vehicle sales, enabling owners nationwide to achieve up to 30 percent improved fuel-economy compared to gasoline vehicles."

50.     On May 16, 2014, Volkswagen issued a press release entitled "Volkswagen Group Receives World Environmental Center's 30th Anniversary Gold Medal Award for Sustainable Development in 2014." In the press release, defendants stated that Volkswagen was 'deeply honored to be recognized by the World Environment Center for our endeavors to create a society where *conservation and eco-mobility are truly standard practices, not the exception.'* The press release stated that *"Volkswagen's holistic approach to sustainability instills eco-conscious behaviors in all aspects of its operations*. This includes following a strong set of

environmental principles when building cars — at every stage of a vehicle's lifecycle." The press

release further stated that "Volkswagen Group offers the *largest low-0O2 fleet in the global*

*market,* with high-performing and efficient powertrain options, *including TDI® Clean Diesel,*

Turbo Stratified Injection (TSI), hybrid, plug-in hybrid and electric."

51.   On January 5, 2015, Volkswagen America issued a press release entitled

"Volkswagen Reports December 2014 Sales and 2014 Year-End Results." In the press release,

defendants stated:

> . . . Volkswagen of America, Inc. (VWoA) today reported 34,058 units
> delivered in December, with 366,970 units delivered in 2014.
>
> "In 2014 Volkswagen of America enhanced the lineup of German-engineered
> vehicles with an all-new, award-winning Golf family, a refreshed Jetta and
> most recently a refined Touareg," said Mark McNabb, chief operating officer,
> Volkswagen of America. "As we kick off 2015, we are encouraged that the
> vehicles have been well received by both the automotive press and our
> dealers."
>
> *     *     *
>
> *Volkswagen's high-mileage, TDI® Clean Diesel models totaled 79,422
> units for the year, accounting for 21.6 percent of sales in 2014. In
> December, 5,348 units were sold, 15.7 percent of sales.*

52.   On August 3, 2015, Volkswagen America issued a press release entitled

"Volkswagen of America Reports July Sales Gain of 2.4 Percent Over July 2014." In the press

release, defendants stated:

> . . . Volkswagen of America, Inc. (VWoA) today reported sales of 31,300
> units delivered in July 2015.
>
> The all-new Golf family of vehicles continued to find success in the market.
> In July, Golf family sales totaled 6,717 units and the *2015 Golf TDI® Clean
> Diesel earned yet another accolade:* a new GUINNESS WORLD
> RECORDS® achievement for the "lowest fuel consumption — 48 U.S.
> contiguous States for a non-hybrid car" with a remarkable 81.17 mpg.

18

"We are encouraged by the consistent sales growth for the Golf across all models within the family. The latest Guinness World Records achievement for the Golf TDI *adds to the suite of accolades which also includes the 2015 North American Car of the Year and Motor Trend Car of the Year,*" said Mark McNabb, chief operating officer, Volkswagen of America.

53.     The true facts, which were known or disregarded by defendants but concealed from the investing public during the Class Period, include the following:

(a)     Volkswagen had utilized an unlawful "defeat device" in many of its diesel vehicles sold in the United States and around the globe that was designed and intended to detect when the vehicle was undergoing official emissions testing and turn the full emissions controls on only during the test. At all other times, however, the emissions controls were deactivated, meaning that pollution was freely released into the environment at levels that far exceeded those allowed by federal and state clean air regulators.

(b)     Defendants' statements regarding Volkswagen's past and future sales, income and profitability were materially false and misleading because defendants failed to disclose that such sales, income and profitability were *only* achieved by misleading its customers, government regulators and investors regarding the operation, performance and environmental impact of its diesel engines, which contributed materially to such sales.

(c)     Defendants' statements regarding "Clean Diesel," as well as their statements regarding Volkswagen's commitment to sustainability and environmental protection, were materially false and misleading because Volkswagen's diesel engines emitted far more pollutants than defendants had represented, and defendants concealed the environmental impact of the Company's diesel engines by intentionally manipulating such engines to prevent their misconduct from being detected.

19

(d)     Volkswagen was exposed to the risk of suffering billions of dollars in damages from fines, penalties, judgments and reputational damage, among other things, if its unlawful misconduct were discovered.

## THE TRUTH BEGINS TO BE REVEALED

54.     The conduct alleged herein and the materially false and misleading statements and omissions made during the Class Period caused Volkswagen ordinary and preferred ADRs to trade at inflated prices of as high as $54.82 and $56.55 per ADR, respectively, during the Class Period and operated as a fraud or deceit on investors in the Company's ADRs.

55.     Later, when the relevant truth began to be disclosed regarding defendants' conduct, the prices of Volkswagen's ADRs suffered significant declines as the artificial inflation began to come out of the prices.

56.     On September 18, 2015, the EPA issued an NOV. The NOV stated that defendants had installed sophisticated software in Volkswagen and Audi diesel vehicles sold in the United States that could detect when the vehicle was undergoing official emissions testing and turn the full emissions controls on only during the test. At all other times, however, the emissions controls were deactivated, meaning that pollution was freely released into the environment at levels exceeding those allowed by federal and state clean air regulators. This software produced and used by Volkswagen is a "defeat device" as defined by the Clean Air Act.

57.     That same day, *The New York Times* published a front-page article entitled "U.S. Orders Major VW Recall Over Emissions Test Trickery." The article reported that the Company had "illegally installed software in its diesel-power cars to evade standards for reducing smog" and that Volkswagen had "admitted to the use a so-called defeat device. The recall involves 4-

20

cylinder Volkswagen and Audi vehicles from model years 2009-2015." The article also reported that the DOJ had opened an investigation and that fines of as much as $18 billion could be imposed as a result of defendants' misconduct.

58.     On this news, the prices of Volkswagen's ADRs declined. The price of the ordinary ADRs fell 4.5% from a close of $38.03 per share on September 17, 2015 to $36.31 per share on September 18, 2015. The price of the preferred ADRs fell 4.2% from a close of $38.05 per share on September 17, 2013 to $36.47 per share on September 18, 2015.

59.     On September 20, 2015, Volkswagen's CEO, Winterkorn, issued a statement regarding the EPA's findings of "manipulations that violate American environmental standards" in Volkswagen diesel cars. Winterkorn admitted that Volkswagen had "broken the trust of our customers and the public" and had begun an external investigation regarding the misconduct. Volkswagen also ordered its U.S. dealerships to stop selling cars impacted by the investigation until further notice.

60.     On this news, the prices of Volkswagen's ADRs declined again. The price of the ordinary ADRs fell 17% from a close of $36.31 per share on September 18, 2015 to $30.10 per share on September 21, 2015. The price of the preferred ADRs fell 18.4% from a close of $36.47 per share on September 18, 2015 to $29.77 per share on September 21, 2015.

61.     On September 22, 2015, Volkswagen issued a press release that provided further details on the breadth of the Company's misconduct. The Company reported that "further internal investigations conducted to date have established that the relevant engine management software is also installed in other Volkswagen Group vehicles with diesel engines. . . . Discrepancies relate to vehicles with Type EA 189 engines, involving *some eleven million vehicles worldwide."* The Company also reported that it had set aside a provision of €6.5 billion in the third quarter of 2015

21

related to the misconduct. This news was quickly reported by news outlets across the world, including an article in *The New York Times* entitled "Volkswagen Says 11 Million Cars Worldwide Are Affected in Diesel Deception."

62.   On this news, the prices of Volkswagen's ADRs declined further. The price of the ordinary ADRs fell 15.5% from a close of $30.10 per share on September 21, 2015 to $25.44 per share on September 22, 2015. The price of the preferred ADRs fell 19.5% from a close of $29.77 per share on September 21, 2015 to $23.98 per share on September 22, 2015.

63.   The timing and magnitude of the declines in the prices of Volkswagen's ADRs negates any inference that the losses suffered by Plaintiffs and other Class members were caused by changed market conditions, macroeconomic factors or Company-specific facts unrelated to defendants' fraudulent conduct.

64.   Like other members of the Class of purchasers of Volkswagen ADRs who purchased at artificially inflated prices during the Class Period, Plaintiffs suffered an economic loss, *i.e.,* damages, when the prices of Volkswagen's ADRs declined, as set forth above.

## APPLICABILITY OF THE PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET

65.   A classwide presumption of reliance is appropriate in this action under the United States Supreme Court's holdings in *Affiliated Ute Citizens v. United States,* 406 U.S. 128 (1972) (with respect to material omissions), and *Basic Inc. v. Levinson,* 485 U.S. 224, 226 (U.S. 1988) (with respect to materially false and misleading statements).

66.   Plaintiffs will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

(a)     defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)     the omissions and misrepresentations were material;

(c)     the Company's ADRs traded in an efficient market;

(d)     the misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's ADRs; and

(e)     Plaintiffs and other members of the Class purchased Volkswagen ADRs between the time defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

67.     At all relevant times, the market for Volkswagen ADRs was efficient for the following reasons, among others:

(a)     Volkswagen filed periodic public reports; and

(b)     Volkswagen regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major newswire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts and other similar reporting services.

## CLASS ACTION ALLEGATIONS

68.     Plaintiffs bring this action as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a Class consisting of all those who purchased or otherwise acquired Volkswagen ordinary and preferred ADRs between November 19, 2010 and September 21, 2015, inclusive, and who were damaged thereby. Excluded from the Class are defendants and their families; the officers and directors of the Company, at all relevant times;

23

members of their immediate families and their legal representatives, heirs, successors or assigns; and any entity in which defendants have or had a controlling interest.

69.     Members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members can only be determined by appropriate discovery, Plaintiffs believe that Class members number at least in the hundreds or thousands and that they are geographically dispersed.

70.     Plaintiffs' claims are typical of the claims of the members of the Class because Plaintiffs and all of the Class members sustained damages arising out of defendants' wrongful conduct complained of herein.

71.     Plaintiffs will fairly and adequately protect the interests of the Class members and have retained counsel experienced and competent in class actions and securities litigation. Plaintiffs have no interests that are contrary to or in conflict with the members of the Class Plaintiffs seek to represent.

72.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation make it impossible for the members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

73.     Questions of law and fact common to the members of the Class predominate over any questions that may affect only individual members in that defendants have acted on grounds generally applicable to the entire Class. Among the questions of law and fact common to the Class are:

(a)     whether defendants violated the federal securities laws as alleged herein;

(b)     whether defendants' publicly disseminated press releases and statements during the Class Period omitted and/or misrepresented material facts;

(c)     whether defendants failed to convey material facts or to correct material facts previously disseminated;

(d)     whether defendants acted willfully, with knowledge or severe recklessness in omitting and/or misrepresenting material facts;

(e)     whether the market prices of Volkswagen ADRs during the Class Period were artificially inflated due to the material nondisclosures and/or misrepresentations complained of herein; and

(f)     whether the members of the Class have sustained damages as a result of the decline in value of Volkswagen ADRs when the truth was revealed and the artificial inflation came out of the ADRs' prices and, if so, what is the appropriate measure of damages.

74.     Plaintiffs make the allegations herein based upon the investigation of Plaintiffs' counsel, which included a review of regulatory filings made by Volkswagen with the SEC, as well as other regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company and media reports about the Company. Plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## COUNT I

### For Violation of §10(b) of the Exchange Act and Rule 10b-5
### Against All Defendants

75.     Plaintiffs incorporates ¶¶ 1-74 by reference.

76.     During the Class Period, defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

77.     Defendants violated §10(b) of the Exchange Act and Rule 10b-5 in that they:

(a)     employed devices, schemes and artifices to defraud;

(b)     made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)     engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiffs and others similarly situated in connection with their purchases of Volkswagen ADRs during the Class Period.

78.     Plaintiffs and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Volkswagen ADRs.

79.     Plaintiffs and the Class would not have purchased Volkswagen ADRs at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements and scheme to defraud.

## COUNT II

### For Violation of §20(a) of the Exchange Act
### Against All Defendants

80.     Plaintiffs incorporate ¶¶ 1-79 by reference.

81.     The Individual Defendants acted as controlling persons of Volkswagen, Volkswagen America and Audi within the meaning of §20(a) of the Exchange Act. By reason of

their positions with the Company and their ownership of Volkswagen securities, the Individual Defendants had the power and authority to cause Volkswagen, Volkswagen America and Audi to engage in the wrongful conduct complained of herein.

82.    Volkswagen, Volkswagen America and Audi controlled the Individual Defendants and all of their employees. By reason of such conduct, defendants are liable pursuant to §20(a) of the Exchange Act.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

A.    Determining that this action is a proper class action, designating Plaintiffs as Lead Plaintiff and certifying Plaintiffs as Class representatives under Rule 23 of the Federal Rules of Civil Procedure and Plaintiffs' counsel as Lead Counsel.

B.    Awarding Plaintiffs and the members of the Class damages, including interest;

C.    Awarding Plaintiffs' reasonable costs and attorneys' fees; and

D.    Awarding such equitable/injunctive or other relief as the Court may deem just and proper.

### JURY DEMAND

Plaintiffs demand a trial by jury.

Dated:   October 22, 2015

**COHEN MILSTEIN SELLERS &
   TOLL PLLC**

_Joshua S. Devore_

Daniel S. Sommers
Joshua S. Devore (Va. Bar # 45312)
S. Douglas Bunch
Elizabeth A. Aniskevich (Va. Bar # 81809)
1100 New York Avenue N.W.
Suite 500, East Tower
Washington, DC 20005-3965
Telephone: (202) 408-4600
Facsimile:  (202) 408-4699
Email: dsommers@cohenmilstein.com
         jdevore@cohenmilstein.com
         dbunch@cohenmilstein.com
         eaniskevich@cohenmilstein.com

*Liaison Counsel for Plaintiffs*

**POMERANTZ LLP**
Jeremy A. Lieberman
Gustavo F. Bruckner
J. Alexander Hood II
Marc Gorrie
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com
         ahood@pomlaw.com
         mgorrie@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
Email:  pdahlstrom@pomlaw.com

*Attorneys for Plaintiffs*

28

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.  I, D CLARK BECKLEY, on behalf of Cleveland University f/k/a Cleveland Chiropractic College (the "University"), make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against Volkswagen AG ("Volkswagen" or the "Company"), and authorize the filing of a comparable complaint on behalf of the University.

3. The University did not purchase or acquire Volkswagen securities at the direction of plaintiff's counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.  I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Volkswagen securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. To the best of my current knowledge, the attached sheet lists all of the University's transactions in Volkswagen securities during the Class Period as specified in the Complaint.

6. During the three-year period preceding the date on which this Certification is signed, the University has not sought to serve as a representative party on behalf of a class under the federal securities laws.

7. The University agrees not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond its pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8. I declare under penalty of perjury that the foregoing is true and correct.

Executed _Oct. 19, 2015_
        (Date)

_D. Clark Belkley_
(Signature)

D. CLARK BELKLEY
(Type or Print Name)

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.   I, <u>TIMOTHY MENG</u>, on behalf of The Cleveland Chiropractic College Foundation (the "Foundation"), make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against Volkswagen AG ("Volkswagen" or the "Company"), and authorize the filing of a comparable complaint on behalf of the Foundation.

3.   The Foundation did not purchase or acquire Volkswagen securities at the direction of plaintiff's counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.   I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired Volkswagen securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.   To the best of my current knowledge, the attached sheet lists all of the Foundation's transactions in Volkswagen securities during the Class Period as specified in the Complaint.

6.   During the three-year period preceding the date on which this Certification is signed, the Foundation has not sought to serve as a representative party on behalf of a class under the federal securities laws.

7.   The Foundation agrees not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond its pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.   I declare under penalty of perjury that the foregoing is true and correct.

Executed ____19 Oct 2015____
(Date)

_____
(Signature)   Dr Timothy Mewly

_____
(Type or Print Name)

**VOLKSWAGEN AG**                    **CLEVELAND CHIROPRACTIC COLLEGE GROUP**

**LIST OF PURCHASES AND SALES**

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|------|------------------|-------------------|-----------------|
| **Cleveland Chiropractic College TTEE, Investment Acct** | | | |
| 05/29/2015 | PUR | 500 | $48.4250 |
| 05/29/2015 | PUR | 318 | $48.4500 |
| 09/21/2015 | SAL | 492 | $29.8680 |
| **Cleveland College Foundation Fund A** | | | |
| 03/12/2013 | PUR | 576 | $41.1340 |
| 03/27/2013 | PUR | 1,143 | $37.5280 |
| 07/16/2013 | PUR | 290 | $42.4657 |
| 09/21/2015 | SAL | 492 | $29.8680 |
| 10/09/2015 | SAL | 326 | $28.4155 |
| **Cleveland College Foundation Fund B** | | | |
| 03/06/2013 | PUR | 153 | $41.3300 |
| 03/12/2013 | PUR | 71 | $41.1340 |
| 03/27/2013 | PUR | 30 | $37.5280 |
| 10/08/2013 | SAL | 30 | $44.2200 |
| 09/21/2015 | SAL | 224 | $29.8680 |
| **Cleveland University - Kansas City** | | | |
| 03/12/2013 | PUR | 55 | $41.1340 |
| 03/27/2013 | PUR | 30 | $37.5280 |
| 04/10/2013 | PUR | 215 | $37.7566 |
| 02/03/2014 | PUR | 28 | $48.0018 |
| 07/01/2014 | PUR | 18 | $52.2000 |
| 09/21/2015 | SAL | 246 | $29.8680 |
| **Cleveland Chiropractic College LA** | | | |
| 04/10/2013 | PUR | 215 | $37.7566 |
| 04/17/2013 | PUR | 1,257 | $35.2357 |
| 07/28/2014 | PUR | 58 | $47.1362 |
| 12/03/2014 | PUR | 222 | $44.6700 |
| 09/21/2015 | SAL | 1,052 | $29.8680 |
| **CCC Foundation Capital Campaign** | | | |
| 03/20/2013 | PUR | 39 | $38.6982 |
| 07/28/2014 | PUR | 21 | $47.1362 |
| 09/21/2015 | SAL | 60 | $29.8680 |